## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RYAN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-CV-912-JHP-SAJ |
| | ) | |
| SCOTTY GREEN, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER and OPINION

Before the Court is Defendant Scotty Green's Motion for Summary Judgment,[1] Plaintiff

Ryan Jones's Response in opposition, and Defendant's Reply thereto.  Plaintiff brought suit

under 42 U.S.C. § 1983.  In his Complaint, Plaintiff does not specifically state that Defendant

deprived him of any "rights, privileges, or immunities secured by the Constitution and laws," but

more generally alleges "an overall one-sided physical approach to security enforcement" at the

high school basketball game where the events giving rise to this lawsuit occurred, which

allegation the Court liberally construes as an allegation of excessive force.  In response to this

Complaint, Defendant asserts that he is entitled to qualified immunity as a government official

performing a discretionary function.[2]  Upon review of the briefs and the evidentiary materials

submitted therewith, and for reasons stated below, Defendant's Motion is GRANTED.

---

[1] Plaintiff Ryan Jones originally filed this lawsuit against Scotty Green, individually and in his capacity as a law enforcement officer for the State of Oklahoma, Department of Public Safety, Highway Patrol, Mike Dilbeck, individually and in his capacity as a police officer for the City of Jay, Oklahoma, and David Schackle, individually and in his capacity as Superintendent of Jay Public Schools, a School District of the State of Oklahoma.  The only remaining claim is that asserted against Green individually.

[2] *See* Maldonado v. City of Altus, 433 F.3d 1294, 1314-15 (10th Cir. 2006).

## **Background**

From the undisputed facts of the case,[3] the Court finds the following:

On December 13, 2003, the Stilwell High School basketball team played the Jay High

School basketball team at Jay.  Plaintiff Ryan Jones played for Stilwell.  At the time, Plaintiff

was 5'10" tall and weighed 250 pounds.

Officer Mike Dilbeck was the on-duty, uniformed security officer at the game.

Defendant Scotty Green, who is a highway patrol officer, attended the game in civilian clothing

as a spectator.  The game was very rough and emotional.  During the game, Green approached

Dilbeck to see if everything was under control, and Dilbeck responded that he might need help.

Green was then obligated to cooperate with his fellow law enforcement officer.

Plaintiff was sent into the game with instructions to get a foul.  On the next play, Plaintiff

intentionally fouled Jay High School player Caleb Barnwell so hard that Barnwell went airborne

and fell on the floor.  Barnwell got up and walked to the opposite end of the basketball court.

Plaintiff pushed a referee out of the way and followed Barnwell.  Plaintiff then shoved Barnwell

---

[3] The Court notes that Plaintiff's Response does not comply with LCvR56.1(c), which requires the brief in opposition to a motion for summary judgment to contain "a section which contains a concise statement of material facts to which the party asserts genuine facts exists."  The Rule further requires each fact in dispute to be numbered and, if applicable, to state the numbers of the movant's facts being disputed.  The opposing brief must also refer with particularity to those portions of the record upon which the party relies.  Plaintiff's Response contains no numbered list of material facts.  Although Plaintiff's narrative "Statement of Facts" is around seven pages long, it contains only five citations to the record, three of which refer to an unverified e-mailed transcript of an interview, which exhibit does not comply in the least with Fed. R. Civ. P. 56(e).  Further, Plaintiff only disputes two of Defendant's material facts by number (*i.e.*, numbers 13 and 29), which facts Plaintiff characterizes as "inaccurate," "blatant[ly] exaggerat[ed]," "bias[ed]," and "self-serving," but does not controvert with any supported facts of his own.  Under LCvR56.1(c), "[a]ll material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purposes of summary judgment unless specifically controverted by the statement of material facts of the opposing party."  Thus, the Background provided by the Court herein is ddrawn exclusively from the Statement of Uncontroverted Material Facts in Defendant's Motion, except where otherwise noted.

in the back and knocked him to the floor.  At this time, both benches were on their feet and the

coaches were trying to subdue their teams.[4]

      Dilbeck and Green came onto the basketball court at this time in hopes of diffusing a

potentially hostile situation.  Green reached Plaintiff first and grabbed him from behind.[5]

Plaintiff vigorously resisted the law enforcement officers.  About the time the three men reached

the edge of the basketball court, the Stilwell coaches intervened and separated Plaintiff from the

officers.[6]  While the coaches and officers were talking, Plaintiff returned, pushed Dilbeck aside

and knocked Green's baseball cap off.[7]  The entire altercation lasted around thirty seconds.

---

[4] The Court reviewed DVD footage of the game submitted as Exhibit 8 to Defendant's Motion.
The DVD does not show Plaintiff's second encounter with Barnwell.  It does show that after
Barnwell moved down the court, a referee shoved Plaintiff aside, and seemed to order Plaintiff to
the bench, but Plaintiff continued to pursue Barnwell.  Only after the referee attempted to diffuse
the situation did Dilbeck and Green get involved.

[5] Def. Mtn. at 22, ¶ 22.  From the Court's review of the DVD, it appears that Dilbeck first
grabbed Plaintiff by the arm, and when Plaintiff broke free, Green grabbed him from behind.

[6] The Court's review of the DVD shows Stilwell players trying to hold Plaintiff back while the
coaches and officers talked.

[7] The Court's review of the DVD shows that Dilbeck separated Plaintiff and Green, and verbally
confronted Plaintiff, but did not touch him.  Plaintiff then exited the court, and presumably went
to the locker room.

**Discussion**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party.  Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999).  The presence of a genuine issue of material fact defeats the motion.  An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law.  Id. at 249.

Defendant argues that he is entitled to summary judgment due to his qualified immunity. In this circumstance, a plaintiff is subject to a sort of "reverse burden."  *See* Powell v. Mikulecky, 891 F.2d 1453, 1457 (10th Cir. 1989).  When faced with a qualified immunity defense, the plaintiff must first establish a violation of a constitutional or statutory right, and then show that the "right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right."  Roska v. Peterson, 328 F.3d 1230, 1239 (10th Cir. 2003).  If the plaintiff satisfies this burden, the defendant then bears "the normal burden of a movant for summary judgment of demonstrating that no material facts remain in dispute."  Powell, 891 F.2d at 1457.  Although the Court must always continue to "review the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendant[ ] [is]

entitled to qualified immunity."  Malonado, 433 F.3d at 1315.  This determination is a question

of law for the trial court to decide.  England v. Hendricks, 880 F.2d 281, 283 (10th Cir. 1989).

Plaintiff did not specifically allege a violation of his constitutional or statutory rights in

his Complaint; however, the Court broadly construes Plaintiff's claim as one for excessive force.

Although the events giving rise to this lawsuit did not involve an arrest or a police investigation

*per se*, it is well-settled that law enforcement officers are entitled to use "some degree of

physical coercion or threat thereof" in the course of their normal duties.  *See* Graham v. Connor,

490 U.S. 386, 396 (1989).  What constitutes "reasonable force" must be determined according to

the facts and circumstances of each particular case.  Cortez v. McCauley, 438 F.3d 980, 993 (10th

Cir. 2006) (*quoting* Graham, 490 U.S. at 396).  Further, the determination must take into

consideration what a reasonable officer would have done under the same circumstances:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .  With respect to a claim of excessive force, the same standard of reasonableness at the moment applies.  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

Id. at 993-94 (*quoting* Graham, 490 U.S. at 396).  Under this standard, if Defendant's

actions were objectively reasonable under the circumstances then known to him, he is entitled to

qualified immunity.  Further, the Court notes that "qualified immunity precludes the imposition

of liability for all but the plainly incompetent or those who knowingly violate the law. . . .

Where officers of reasonable competence could disagree on the issue, immunity should be

recognized."  Id. at 1251 (internal citations, quotations, and alterations omitted).

Here, two other law enforcement officers have testified that Defendant's actions were reasonable.  [*See* Def. Mtn., Ex. 2, Dilbeck Aff. at ¶ 16 ("Trooper Green's actions that night were entirely reasonable and justified to assist me diffuse a hostile situation.  Our actions prevented Ryan Jones from further attacking Barnwell and helped insure that the crowd did not erupt in anger."); Def. Mtn., Ex. 6, Cope Expert Rep. at ¶ 10(d) (opining that the officers demonstrated "great restraint" and used "objectively reasonable and lawful" force to remove plaintiff from the playing court).]  Moreover, Oklahoma law expressly permits the use of force in circumstances similar to those in this case:

> To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful . . . [w]hen necessarily committed by a public officer in the performance of any legal duty, or by any other person assisting such officer or acting by such officer's direction.

21 Okla. Stat. § 643.

Given the overall lack of evidentiary support and relevant legal argument, the Court finds that Plaintiff's Complaint borders on frivolous.  It is undisputed that tensions ran high at this basketball game and that Plaintiff's play was aggressive.  Even if the law enforcement officers engaged in "an overall one-sided physical approach" to controlling the situation, and even if Defendant "refuses to acknowledge that Ryan Jones is a very nice young man," such allegations simply do not amount to constitutional violations.  Further, even assuming *arguendo* that Defendant used excessive force or otherwise violated Plaintiff's rights, Plaintiff has not demonstrated that the "right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right."  *See* Roska, 328 F.3d at 1239.  Indeed, under the law cited above, and given the circumstances of the case, the Court finds that Plaintiff **could not** so demonstrate.

## **Conclusion**

Plaintiff has failed to meet its initial burden under 42 U.S.C. § 1983; he has neither

established a constitutional violation nor shown that a reasonable person in defendant's position

would have known that his actions were improper.  Plaintiff has also failed to identify any

genuine issue of material fact to preclude the application of qualified immunity in this case.  In

light of the foregoing, Defendant's Motion for Summary Judgment is GRANTED.  The Pretrial

set April 25, 2006 is hereby STRICKEN.

James H. Payne
United States District Judge
Northern District of Oklahoma